**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**ALLSTATE INSURANCE COMPANY, as
Subrogee of Daniel and Margaret Cain**                                                     **PLAINTIFF**

**VERSUS**                                                                          **CIVIL ACTION NO. 2:09CV211**

**BLACK & DECKER (US), INC. and
JASON AND EMILY MOORE**                                                         **DEFENDANTS**

### MEMORANDUM OPINION

This cause is before the Court on the plaintiff's Motion to Remand [5]. The Court, having reviewed the motion, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about March 4, 2008, a fire broke out in a home owned by Daniel and Margaret Cain but leased to and occupied by Jason and Emily Moore. The Cains maintained insurance coverage on the home through Allstate Insurance Company [hereafter Allstate]. Allstate undertook an investigation of the loss[1] and ultimately paid the Cains' claim in the amount of $79,551.92. As a result of that payment, Allstate assumed a right of subrogation as respects any causes of action pertaining to the March 4, 2008 fire.

---

[1] No one was home at the time of the fire. Fire investigators concludes that the fire originated in the kitchen area of the home in close proximity to a toaster oven manufactured by Black & Decker..

Allstate Insurance Company filed suit in the County Court of Desoto County on November 2, 2009 against Black & Decker (US), Inc.[2] [hereafter Black & Decker] and Jason and Emily Moore.[3] The complaint alleges a products liability claim against Black & Decker based on products liability. The complaint alleges, in the alternative, liability for the fire on the part of Jason and/or Emily Moore based on negligence. Black & Decker removed the suit to federal court on December 7, 2009. The jurisdictional basis for the removal was diversity of citizenship and the requisite amount in controversy. Black & Decker's Notice of Removal asserts that the resident defendants, Jason and Emily Moore, have been improperly joined in an effort to prevent removal. In the alternative, Black & Decker maintains that removal was appropriate because it was accomplished before either of the resident defendants were "properly joined and served" in accordance with the requirement of 28 U.S.C. § 1446(b).[4] Allstate promptly filed a motion contesting the matters raised in the Notice of Removal and seeking remand to state court. The matter has been fully briefed and the Court is ready to rule.

## LEGAL ANALYSIS

It is axiomatic that the party seeking removal bears the burden of proving the jurisdictional prerequisites. Where the basis for removal is diversity jurisdiction based on an allegation of fraudulent joinder, the defendant bears a heavy burden in establishing the right to a federal forum.

---

[2] Plaintiff effected service of process on Black & Decker on November 10, 2009.

[3] The record reflects that Jason Moore died some time prior to the filing of the state court complaint. Allstate effected service of process on Emily Moore on January 4, 2010–well after the removal.

[4] Both parties devoted substantial effort and resources to briefing on the forum defendant rule. However, inasmuch as the improper joinder argument is decisive, it is unnecessary to address the latter argument.

The removing defendant must present clear and convincing evidence of fraudulent joinder in order to avoid remand. Rogers v. Modern Woodmen of America, 1997 WL 206757, *2 (N.D. Miss. 1997). Fraudulent joinder may be proven in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. Travis v. Irby, 326 F.3d 644 (5th Cir. 2003). Only where a plaintiff cannot posit a reasonable basis for predicting that state law would allow recovery may a defendant prevail on an allegation of fraudulent joinder.

The existence of a cognizable claim is to be determined by reference to the allegations contained in the plaintiff's state court pleadings. Ironworks Unlimited v. Purvis, 798 F. Supp. 1261, 1263 (S.D. Miss. 1992). The Court is also free to pierce the pleadings by considering summary judgment-type evidence such as affidavits and deposition testimony. Carriere v. Sears, Roebuck and Co., 893 F.2d 98, 100 (5th Cir. 1990). But in doing so, however, the Court must remain mindful not to overstep its province by transforming the jurisdictional inquiry into one that is merits-based. B, Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir. 1981). In determining whether the joinder of a party was fraudulent, the district court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff." B., Inc. v. Miller Brewing Co., 663F.2d 545, 549 (5th Cir. 1981). Similarly, any uncertainties in the substantive law must also be resolved in favor of the plaintiff. Head v. United Ins. Co. of America, 966 F. Supp. 455, 457 (N.D. Miss. 1997).

Allstate insists a 12(b)(6)-type analysis is most appropriate to the resolution of the instant motion and urges that reference to the allegations of its Complaint clearly show a cognizable claim

3

against the Moores.[5]  However, in light of the fact that Black & Decker's Notice of Removal appended affidavit testimony by Emily Moore, the Court concludes that it is most proper and prudent to pierce the pleadings and conduct a summary inquiry to determine the viability of the Allstate's claim against Ms. Moore.  Moore's affidavit addresses each of the negligence theories in plaintiff's Complaint.[6]  She testified unequivocally:

> 3.  We owned a Black & Decker toaster oven.  On the day of the fire we had not used it, it was in the "off" position and was, as usual, plugged into the wall plug or electrical receptacle on the back of the counter to the right of the stove.  On the day of the fire, I used the regular kitchen stove only . . . .
>
> 4.  We got this toaster oven soon after our wedding which was August 20, 1999 and have used the toaster oven regularly and never had any problem at all with it, it never malfunctioned during that time, and it never needed any repair but worked totally correctly and satisfactorily as we expected since we got it and all the parts were functioning right and not damaged to my knowledge.  We did not leave the toaster oven "on" and I know of no defect in this toaster oven.
>
> 5.  There is no factual basis for Allstate's allegations against us in the Complaint or especially in Paragraph 10 involving our alleged negligence in failing to turn off the toaster oven, in leaving it on, in leaving it unattended, or our being aware of any dangerous defect in the toaster oven and other unspecified ways.

---

[5]  Specifically, the Complaint alleges that the Moores were negligent in:

I.   Failing to turn off the toaster oven;
ii.  Leaving the toaster oven unattended;
iii. Being aware of and assenting to, or failing to be aware of, a dangerous defect in the toaster oven; and/or
iv.  Other acts as will be shown at the trial of this matter.

Plaintiff's Complaint at p. 5.

[6]  Allstate's memorandum brief in support of its Motion to Remand also requested that the Court strike Emily Moore's affidavit under F.R.C.P. 56(e)(1) on grounds that it contains conclusory statements, hearsay and statements which she lacks the qualifications to make. Having carefully considered the contents of the affidavit, the Court finds that plaintiff's motion lacks merit and should be denied.

Exhibit A to defendant's Notice of Removal at pp. 1-2. The only "evidence" submitted by plaintiff to refute Moore's testimony was in the form of an affidavit by its expert Jim Swain, a senior fire investigator with Unified Investigations and Sciences, Inc.[7] His testimony is as follows:

> 3. . . . UIS was hired by Allstate Insurance Company to investigate the origin and cause of a fire occurring at a home owned by its insured, Daniel and Margaret Cain. At the time of the fire, the home was rented to and occupied by Jason and Emily Moore. He conducted the initial scene examination and Tony Bishop, a professional electrical engineer employed by UIS, conducted a follow up examination of the building wiring and appliances.
>
> 4. Upon completion of the fire scene examination and after interviewing the occupants, Jason and Emily Moore, and the responding firemen, it was concluded that the fire originated in the northwest section of the kitchen on the surface of the countertop where a Black & Decker toaster oven, owned by the Moores, was located during the fire. The toaster oven was retained from the scene and maintained in its entirety with no destructive testing conducted by UIS.
>
> . . .
>
> 6. At Black & Decker's request and with approval from Allstate Insurance, the toaster oven was shipped to Black & Decker for its non-destructive inspection. When the evidence items were returned from Black & Decker, it was determined that Black & Decker had performed a destructive inspection of the toaster oven without proper representation from Allstate Insurance Company or UIS being present to document and observe the process and with those destructive measures preventing conclusion of UIS' analysis of it.
>
> 7. Given the evidence depicted at the fire scene, the most probable ignition source of the fire at issue involved the Black & Decker toaster oven either through a malfunction or defect or by being left on and unattended.

Swain's Affidavit at pp. 1-3. Despite Allstate's effort to showed a contested factual issue on the question of the Moore's alleged negligence, the Fifth Circuit has long ruled that a plaintiff may not prevail by having an expert speculate as to two possibilities as its experts are obviously doing in the

---

[7] Allstate also submitted an affidavit by another expert, Tony H. Bishop. However, it is not helpful in determining whether plaintiff has a reasonable possibility of prevailing on its negligence claim against Emily Moore.

5

present case. Brown v. Parker-Hannifin Corp., 919 F.2d 308, 311 (5th Cir. 1990). Similarly, a plaintiff cannot prevail on a negligence action under Mississippi law where his case is built solely on speculation and conjecture. As aptly recognized by the Mississippi Supreme Court in Rudd v. Montgomery Elevator Co.:

> [Plaintiff's expert] testimony with all reasonable inferences based thereon, carries us no further than simple speculation . . . . It is elementary law that in any suit based upon negligence, it is incumbent upon the plaintiff to first prove by a preponderance of the evidence that the defendant was negligent and that such negligence was the proximate cause of the accident.

Rudd, 618 So.2d 68, 72-78 (Miss. 1993). Plaintiff has submitted no materials which tend to rebut the defendant's tender of evidentiary material negating negligence on the part of the Moores. Upon the record before the Court, there is no reasonable basis in fact to support a recovery against Moore under Mississippi law.

## CONCLUSION

Accordingly, the Court finds that the plaintiff's Motion to Remand [5] is not well-taken and should be denied. Furthermore, inasmuch as the Court's finding is premised on the improper joinder of Jason and Emily Moore, said individuals should be dismissed with prejudice as party defendants to this action.

SO ORDERED, this the 21st day of December, 2010.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE